**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cinnamon Rose Prowell,<br><br>    Plaintiff,<br><br>vs.<br><br>Kennedy Restaurant & Bar Management, Inc; and Seven Vines, Inc., dba Vine Tavern & Eatery,<br><br>    Defendants. | No. CV-04-1559-PHX-DGC<br><br>**ORDER** |

Defendants have filed a motion for summary judgment. Doc. #43. Plaintiff has filed a response to the motion and Defendants have filed a reply. Docs. ##47-48. For the reasons set forth below, the Court will grant the motion in part.[1]

**I.    Background**

Defendants own and operate several Vine Tavern and Eatery ("Vine") restaurants in Arizona and Iowa. Plaintiff was employed by Defendants from November 2000 until she was terminated in November 2002. Plaintiff worked as a server at the Vine restaurant located in Tempe, Arizona.

---

[1] The Court will deny the request for oral argument because the parties have submitted memoranda thoroughly discussing the law and evidence and the Court concludes that oral argument will not aid its decisional process. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

Plaintiff commenced this action by filing a complaint against Defendants on July 7, 2004. Doc. #1. Plaintiff filed an amended complaint on August 12, 2005. Doc. #35. The amended complaint asserts sexual harassment and retaliation claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. *Id.*

**II.    Summary Judgment Standard.**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Only disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

**III.   Plaintiff's Sexual Harassment Claim.**

Plaintiff alleges that her former manager, John Quintanares, sexually harassed her in violation of Title VII. Doc. #35 ¶¶ 7-9. Defendants argue that they are not vicariously liable for the alleged conduct of Quintanares because they can establish the "reasonable care" affirmative defense set forth in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). Doc. #43 at 6. "The affirmative defense has two prongs: (1) 'that [Defendants] exercised reasonable care to prevent and correct promptly any sexually harassing behavior'; and (2) 'that [Plaintiff] unreasonably failed to take advantage of the preventive or corrective opportunities provided by [Defendants] or to avoid harm otherwise.'" *Nichols v. Azteca Rest. Enters.*, 256 F.2d 864, 877 (9th Cir. 2001) (quoting *Ellerth*, 524 U.S. at 765); *see Faragher*, 524 U.S. at 807.

Generally, the defense is available "only if the alleged harassment has not culminated in a tangible employment action." *EEOC v. Dinuba Med. Clinic*, 222 F.3d 580, 587 (9th Cir. 2000); *see Faragher*, 524 U.S. at 808 ("When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages[.]"); *Ellerth*, 524 U.S. at 765 (same). "A tangible employment action constitutes a significant change in

1 employment status, such as hiring, firing, failing to promote, reassignment with significantly 2 different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 3 U.S. at 761. "[I]f a tangible employment action occurred, [Defendants] may still assert the 4 affirmative defense if the tangible employment action 'was unrelated to any harassment or 5 complaint thereof.'" *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 959 (9th Cir. 2004) 6 (quoting *Nichols*, 256 F.3d at 877).

7 Defendants contend that no tangible employment action occurred because Quintanares 8 never "attempted to extort sexual favors from [Plaintiff] by conditioning her continued 9 employment on her participation in such activity." Doc. #43 at 7. Plaintiff argues that she 10 has presented sufficient evidence of tangible employment actions in the form of undesirable 11 reassignment and termination. Doc. #47 at 5, ¶¶ 22-24. Defendants counter that Plaintiff's 12 termination does not constitute a tangible employment action as contemplated by *Faragher* 13 and *Ellerth* because the termination occurred after the alleged harassment took place and 14 Quintanares was not involved in the termination decision. Doc. #48 at 4 (citing *Holly D. v.* 15 *Cal. Inst. of Tech.*, 339 F.3d 1158 (9th Cir. 2003)).[2]

16 Construed in Plaintiff's favor, the evidence shows the following: Plaintiff delivered 17 a sexual harassment complaint to Defendants on October 14, 2002. Docs. ##44 ¶ 24 & 18 Ex. H, 47 ¶ 47. The complaint alleged that Quintanares had sexually harassed Plaintiff and 19 some of her co-workers on numerous occasions. Doc. #44 Ex. H. The same day, 20 Quintanares drafted a letter recommending to Steve Wells, the restaurant's general manager, 21 that Plaintiff be terminated in part because of her "constant whining and complaining[.]" 22 Docs. ##44 Ex. G, 47 Ex. 4. On October 15, 2002, Quintanares gathered and faxed to Mark 23 Pompeo, Defendants' operations manager, all documentation Defendants had on Plaintiff. 24 Doc. #47 Ex. 3.

25 On October 25, 2002, Plaintiff met with Wells and Pompeo regarding her complaint 26 of sexual harassment. Docs. ##44 ¶ 35, 47 ¶ 21. Plaintiff was told that Vine management

---

28 [2]Defendants do not address Plaintiff's argument that her reassignment to less desirable shifts constitutes a tangible employment action.

- 3 -

1 wanted to resolve her complaint by transferring her to another Vine restaurant. Docs. ##44
2 ¶ 36, 47 ¶ 21. Plaintiff declined the transfer because she would have made less money at a
3 different restaurant. Docs. ##44 ¶¶ 37-38, 47 Ex. 2 at 181, 228-29. Wells and Pompeo
4 concluded that the only other way to resolve Plaintiff's complaint was to have Plaintiff and
5 Quintanares work different shifts. Doc. #44 ¶ 38. Plaintiff was reassigned to work shifts that
6 were less lucrative than the shifts she had been working prior to the October 25 meeting.
7 Docs. ##44 Ex. L, 47 Ex. 2 at 184, 238-39. Wells and Pompeo told Plaintiff that she was
8 permitted to patronize the restaurant as a customer when Quintanares was working. Doc. #47
9 Ex. 2 at 230.

10 On October 31, 2002, Plaintiff went to the restaurant with some friends and co-
11 workers. *Id.* at 234-37. Quintanares refused to let Plaintiff enter the restaurant. *Id.* Plaintiff
12 informed Quintanares that she had the right to patronize the restaurant as a customer and an
13 off-duty employee. *Id.* Quintanares responded by telling Plaintiff to "just keep talking" and
14 she might just talk her way off the schedule or out of a job. Doc. #44 Exs. J-K. Quintanares
15 threatened to get Wells so that they could "all have a talk." *Id.* Ex. K. Wells terminated
16 Plaintiff three days later on November 3, 2002. Doc. #47 Ex. 2 at 238-39, 260.

17 A jury reasonably could conclude from this evidence that Plaintiff's termination was
18 related to the alleged harassment and that Quintanares was involved in the termination
19 decision. Accepting Plaintiff's evidence as true, Quintanares recommended Plaintiff's
20 termination when she complained about his harassment and personally threatened Plaintiff
21 with termination during their encounter on October 31, 2002. There is thus a genuine issue
22 of fact as to whether Plaintiff's termination constitutes a tangible employment action
23 precluding Defendants from asserting the "reasonable care" affirmative defense. *See*
24 *Faragher*, 524 U.S. at 808 ("No affirmative defense is available . . . when the supervisor's
25 harassment culminates in a tangible employment action, such as discharge, demotion, or
26 undesirable reassignment."); *Ellerth*, 524 U.S. at 765 (same); *Holly D.*, 339 F.3d at 1169 n.14
27 (stating that the harassing supervisor "need not be empowered to make the final
28 determination with respect to ultimate employment decisions" and that the "power to make

1 an effective recommendation is enough"); *Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 956
2 (9th Cir. 1999) (reversing summary judgment for the defendant in part because fact issues
3 existed as to whether the plaintiff's termination constituted a tangible employment action).[3]
4 The Court will deny Defendants' motion with respect to Plaintiff's sexual harassment claim.

5 **IV.    Plaintiff's Retaliation Claim.**

6       Title VII "prohibits retaliation against an employee 'because [she] has opposed any practice made an unlawful employment practice'" by Title VII. *Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1082 (9th Cir. 1996) (quoting 42 U.S.C. § 2000e-3(a)). Plaintiff can make a prima facie case of unlawful retaliation by producing evidence that (1) she engaged in an activity protected by Title VII, (2) Defendants subjected her to an adverse employment action, and (3) there was a causal link between the protected activity and the adverse action. *See Vasquez v. County of L.A.*, 349 F.3d 634, 642 (9th Cir. 2004). If Plaintiff makes a prima facie case, the burden of production shifts to Defendants to present a legitimate, non-retaliatory reason for the adverse employment action. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). If Defendants carry this burden, Plaintiff "must demonstrate a genuine issue of material fact as to whether the reason advanced by [Defendants] was a pretext." *Id.*

       Defendants contend that Plaintiff has presented no evidence that there was a causal link between her complaint of harassment and her termination. Doc. #43 at 11. The Court concludes that Plaintiff has presented sufficient evidence to establish a prima facie case. Plaintiff was terminated within three weeks of her complaint. The temporal proximity between the complaint and termination is sufficient circumstantial evidence to satisfy the causation element of the prima facie case of retaliation. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (stating that temporal proximity between protected activity and an adverse employment action can constitute sufficient evidence of causality to establish a prima facie case where the temporal proximity is "very close"); *Yartzoff v.*

---

[3] Given this ruling, the Court need not address whether Defendants have proven the two elements of the affirmative defense.

1  *Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (holding that sufficient evidence of causation
2  existed where the adverse employment action occurred less than three months after the
3  protected activity); *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000) ("That an
4  employer's actions were caused by an employee's engagement in protected activities may
5  be inferred from 'proximity in time between the protected action and the allegedly retaliatory
6  employment decision.'") (quoting *Yartzoff*, 809 F.2d at 1376); *see also Villiarimo v. Aloha
7  Island Air, Inc*., 281 F.3d 1054, 1061-62 (9th Cir. 2002) ("'[T]he requisite degree of proof
8  necessary to establish a prima facie case for Title VII on summary judgment is minimal and
9  does not even need to rise to the level of a preponderance of the evidence.'") (citation
10 omitted).

11         Defendants further contend that they have established legitimate, non-retaliatory
12 reasons for Plaintiff's termination – that Plaintiff was terminated for poor work performance
13 and insubordination during her encounter with Quintanares on October 31, 2002. Docs. ##43
14 at 11, 44 ¶ 41. Plaintiff has presented sufficient evidence to raise genuine issues of fact as
15 to whether these stated reasons are pretexts for retaliation.

16         First, Plaintiff disputes that her work performance was inadequate. Doc. #47 at 15,
17 ¶¶ 26-28. Six weeks before she complained about harassment, Plaintiff received an
18 employee evaluation that rated her an "[e]xcellent server" and stated that she was "one of
19 only a handful of employees that [Defendants] can trust with ANY task that needs to be
20 completed on time." Doc. #47 Ex. 5 (emphasis in original). Plaintiff received mostly high
21 scores on her work-related traits, averaging a score of 8 on a scale of 1-10, with 10 being the
22 best. *Id.*

23         Second, Plaintiff disputes that she was insubordinate during her encounter with
24 Quintanares on October 31, 2002. Doc. #47 at 15. Plaintiff has testified that both Wells and
25 Pompeo gave her permission to patronize the restaurant when Quintanares was working.
26 Doc. #47 Ex. 2 at 229-30. Plaintiff has further testified that she explained this to Quintanares
27 during their encounter and that when he still refused to let her enter the restaurant, she simply
28 waited in the parking for her friends since she did not drive herself to the restaurant. *Id.* at

1  236-37.

2  Third, shortly after Plaintiff complained about harassment, Quintanares recommended
3  Plaintiff's termination and gathered all of the documents Defendants had on Plaintiff. *Id.*
4  Exs. 3-4.

5  Finally, Plaintiff was terminated less than three weeks after complaining about the
6  alleged harassment. Docs. ##44 Ex. G, 47 Ex. 2 at 238-39, 260.

7  This evidence, viewed in Plaintiff's favor, raises genuine issues of material fact as to
8  whether Defendant's stated reasons for terminating Plaintiff are pretexts for retaliation. *See*
9  *Villiarimo*, 281 F.3d at 1062 (stating that a plaintiff can survive summary judgment by
10 presenting specific and substantial circumstantial evidence that the defendant's stated reasons
11 are pretextual); *Ray*, 217 F.3d at 1244 ("We . . . hold that, viewing the evidence in the light
12 most favorable to Ray, the district court erred in granting summary judgment on the
13 retaliation claim."); *see also Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124
14 (9th Cir. 2000) (stating that the question of whether the defendant's stated reasons are
15 pretextual "is one that can only be resolved though a searching inquiry – one that is most
16 appropriately conducted by the factfinder, upon a full record'") (citation omitted); *Reeves v.*
17 *Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000) (stating that "a plaintiff's prima facie
18 case, combined with sufficient evidence to find that the employer's asserted justification is
19 false, may permit the trier of fact to conclude that the employer unlawfully [retaliated]").
20 The Court will deny Defendants' motion with respect to Plaintiff's retaliation claim.

21 **V.     Damages.**

22 Plaintiff alleges that as a result of Defendants' conduct, she has been damaged in the
23 form of lost salary, benefits, and employment opportunities. Doc. #35 ¶ 17. Defendants
24 argue that there is no evidence that Plaintiff has suffered any economic damages and that her
25 2003 and 2004 tax returns show that she made more money in those years than she made
26 while working at the Vine. Docs. ##43 at 10-11, 44 Exs. M-R. Plaintiff agrees with
27 Defendants that she has fully mitigated her economic damages and is thus not entitled to an
28 award of back pay. Doc. #47 at 16-17 (citing 42 U.S.C. § 2000e-5(g)). The Court will

1 accordingly grant Defendants' motion with respect to this issue.

2 **IT IS ORDERED:**

3 1. Defendants' motion for summary judgment (Doc. #43) is **granted in part** and **denied in part** as set forth in this order.

5 2. The Court will set a pretrial conference by separate order.

6 DATED this 3rd day of May, 2006.

*David G. Campbell*
United States District Judge

- 8 -